Filed 1/24/13

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| JAMSHID ARYEH, | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | |
| | ) | S184929 |
| v. | ) | |
| | ) | Ct.App. 2/8 B213104 |
| CANON BUSINESS SOLUTIONS, INC., | ) | |
| | ) | Los Angeles County |
| Defendant and Respondent. | ) | Super. Ct. No. BC384674 |
| _____ | ) | |

The common law theory of continuous accrual posits that a cause of action challenging a recurring wrong may accrue not once but each time a new wrong is committed. We consider whether the theory can apply to actions under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.; hereafter UCL) and, if so, whether it applies here to save plaintiff Jamshid Aryeh's suit from a limitations bar. We conclude: (1) the text and legislative history of the UCL leave UCL claims as subject to the common law rules of accrual as any other cause of action, and (2) continuous accrual principles prevent Aryeh's complaint from being dismissed at the demurrer stage on statute of limitations grounds. Accordingly, we reverse the Court of Appeal's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Aryeh runs a copy business under the name ABC Copy & Print.  Defendant Canon Business Solutions, Inc. (Canon) sells, leases, services, and repairs copiers and other office products.  In November 2001 and February 2002, Aryeh entered agreements with Canon to lease copiers for a term of 60 months.  The leases required Aryeh to pay monthly rent for each copier, subject to a maximum copy allowance.  Copies in excess of the monthly allowance required payment of an additional per copy charge.

Canon serviced the leased copiers periodically.  Shortly after entering the two leases, Aryeh noticed discrepancies between meter readings taken by Canon employees and the actual number of copies made on each copier.  When Canon would not respond to Aryeh's complaints, Aryeh began compiling independent copy records.  Aryeh concluded that during service visits, Canon employees were running test copies—according to the operative complaint, a total of at least 5,028 copies over the course of 17 service visits between February 2002 and November 2004.  These copies resulted in Aryeh exceeding his monthly allowances and owing excess copy charges and late fees to Canon.

Aryeh sued in January 2008, alleging a single claim for violation of the UCL.  The original complaint alleged Canon knew or should have known it was charging for excess copies and that the practice of charging for test copies was

---

[1] On appeal from the sustaining of a demurrer, we accept as true the well-pleaded facts in the operative complaint, Aryeh's second amended complaint. (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 505, fn. 1.)  We will not, however, disregard contrary allegations in earlier complaints to the extent they are pertinent, as a plaintiff may not disavow earlier concessions by omitting them from subsequent complaints. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742-743.)

both unfair and fraudulent. The complaint also included class allegations. Aryeh originally sought restitution and injunctive relief, but later amended his complaint to seek only restitution.

Canon demurred, arguing that the claim was barred by, inter alia, the statute of limitations. (See Bus. & Prof. Code, § 17208.)[2] After twice sustaining demurrers with leave to amend, the trial court finally sustained a demurrer without leave to amend and dismissed the action with prejudice. Its order recited several grounds, but the court made clear the primary basis for dismissal was the statute of limitations. The trial court read state law as establishing that "the clock [on a UCL claim] starts running when the first violation occurs." Consequently, because the second amended complaint established a first violation in 2002, the claim was barred by the four-year statute of limitations.

A divided Court of Appeal affirmed. The majority agreed with the trial court that neither delayed discovery nor the continuing violation doctrine could be applied to extend the statute of limitations for UCL claims; accordingly, Aryeh's claim was untimely. The dissent would have reversed under the theory of continuous accrual, reasoning that even if some parts of Aryeh's claim were stale, not all parts of it were barred.

We granted review to resolve lingering uncertainty over the timing of accrual and the applicability of continuing-wrong accrual principles under the UCL.

---

[2]    All further unlabeled statutory references are to the Business and Professions Code.

DISCUSSION

This appeal follows the sustaining of a demurrer. The application of the statute of limitations on undisputed facts is a purely legal question (see *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112); accordingly, we review the lower courts' rulings de novo. We must take the allegations of the operative complaint as true and consider whether the facts alleged establish Aryeh's claim is barred as a matter of law. (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810-811.)

## I. *Accrual and Equitable Exceptions to the Usual Running of the Statute of Limitations*

An affirmative defense, the statute of limitations exists to promote the diligent assertion of claims, ensure defendants the opportunity to collect evidence while still fresh, and provide repose and protection from dilatory suits once excess time has passed. (See, e.g., *Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1246; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 395-396; *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 755-756; *Jolly v. Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1112.) The duration of the limitations period marks the legislatively selected point at which, for a given claim, these considerations surmount the otherwise compelling interest in adjudicating on their merits valid claims. (See *Johnson v. Railway Express Agency* (1975) 421 U.S. 454, 463-464; *Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 797; *Norgart*, at p. 396.)

The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues. (See Code Civ. Proc., § 312 [an action must "be commenced within the periods prescribed in this title, after the cause of action shall have accrued"]; *Pooshs v. Philip Morris USA, Inc.*, *supra*, 51 Cal.4th at p. 797; *Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 806; *Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at p. 397.) Traditionally at common law,

a "cause of action accrues 'when [it] is complete with all of its elements'—those elements being wrongdoing, harm, and causation." (*Pooshs*, at p. 797, quoting *Norgart*, at p. 397.) This is the "last element" accrual rule: ordinarily, the statute of limitations runs from "the occurrence of the last element essential to the cause of action." (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187; accord, *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815; *Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520, 531, fn. 4.)

To align the actual application of the limitations defense more closely with the policy goals animating it, the courts and the Legislature have over time developed a handful of equitable exceptions to and modifications of the usual rules governing limitations periods. These doctrines may alter the rules governing either the initial accrual of a claim, the subsequent running of the limitations period, or both. The " 'most important' " of these doctrines, the discovery rule, where applicable, "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at p. 397; accord, *Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 807.) Equitable tolling, in turn, may suspend or extend the statute of limitations when a plaintiff has reasonably and in good faith chosen to pursue one among several remedies and the statute of limitations' notice function has been served. (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99-100.) The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale. (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 533.) The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them.

5

(*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 811-818; see also *National Railroad Passenger Corporation v. Morgan* (2002) 536 U.S. 101, 118.) Finally, under the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period. (*Howard Jarvis Taxpayers Assn. v. City of La Habra*, *supra*, 25 Cal.4th at pp. 818-822.)[3]

## II. *Common Law Accrual and the UCL*

We consider the application of common law rules to the UCL in deciding when a UCL claim accrues.

We begin with the language of the UCL's statute of limitations. "Any action to enforce any cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action accrued." (§ 17208.) Neither section 17208 nor any other part of the UCL offers a definition of what it means for a UCL claim to accrue; this is not a limitations statute in which the Legislature has assumed the task of articulating the specific ways in which established common law principles may or may not apply. (Cf. *Quarry v. Doe I* (2012) 53 Cal.4th 945, 983-984 [discussing Code Civ. Proc., § 340.1, which legislatively supplants common law delayed-discovery principles]; *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, *supra*, 18 Cal.4th at pp. 756-758 [discussing Code Civ. Proc., § 340.6, which legislatively supplants common law equitable-tolling principles].)

---

[3] These last two exceptions, the continuing violation doctrine and the theory of continuous accrual, are branches of the principles that apply to continuing wrongs. We discuss them in more depth below. (See *post*, at pp. 13-17.)

This silence triggers a presumption in favor of permitting settled common law accrual rules to apply. "As a general rule, '[u]nless expressly provided, statutes should not be interpreted to alter the common law, and should be construed to avoid conflict with common law rules. [Citation.] "A statute will be construed in light of common law decisions, unless its language ' "clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter . . . ." [Citations.]' [Citation.]" ' " (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 297.) We thus may assume the Legislature intended the well-settled body of law that has built up around accrual, including the traditional last element rule and its equitable exceptions, to apply fully here.

The legislative history, moreover, indicates the Legislature intended the UCL's limitations period to be subject to the usual judicial rules governing accrual, rather than to special legislatively declared accrual rules. Section 17208 was passed in 1977 as part of an act that consolidated and recodified existing state unfair competition laws without substantive change in the Business and Professions Code. (Stats. 1977, ch. 299, § 1, p. 1203; Assem. Off. of Research, 3d reading analysis of Assem. Bill No. 1280 (1977-1978 Reg. Sess.) as introduced Mar. 31, 1977, p. 1.) The adoption of an express statute of limitations was not intended to modify but to clarify the presumed applicable limitations period. (Assem. Com. on Judiciary, Bill Digest of Assem. Bill No. 1280 (1977-1978 Reg. Sess.) p. 1.) On the question of accrual, legislative committee reports are conspicuously silent, and the enrolled bill report expressly confirms the understanding that the subject is to be governed not by statute but by judicial construction: "Questions concerning the point at which the statute of limitations begins will be left to judicial decision." (Governor's Off. of Legal Affairs, Enrolled Bill Rep. on Assem. Bill No. 1280 (1977-1978 Reg. Sess.) June 27, 1977,

7

p. 1.)  It thus appears the Legislature, by passing a bare-bones limitations statute and delegating to the judiciary the task of defining the point of accrual in particular cases, left courts free to determine whether the circumstances in each case call for application of either the general last element rule of accrual or any of its equitable exceptions.

In this case, the trial court concluded "because this is a [UCL section] 17200 claim . . . there is no continuing practices doctrine that applies here." Affirming, the Court of Appeal majority held that a UCL claim necessarily "accrues when the defendant's conduct occurs, not when the plaintiff learns about the conduct."  It went on to conclude that in addition to delayed discovery, the continuing violation doctrine also is categorically inapplicable to UCL claims.

In treating the UCL as exceptional for accrual purposes, the trial court and the Court of Appeal joined one side of a split in the Courts of Appeal over whether the UCL should, like any other statute, be interpreted as subject to all the usual rules of accrual, or whether the statute categorically forecloses modified accrual based on delayed discovery, continuing-wrong principles, and their ilk.  (Compare, e.g., *Salenga v. Mitsubishi Motors Credit of America, Inc.* (2010) 183 Cal.App.4th 986, 996 with *Broberg v. The Guardian Life Ins. Co. of America* (2009) 171 Cal.App.4th 912, 920-921; see *Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 634, fn. 7 [acknowledging the split].)  The roots of that split trace back to a single federal trial court decision, *Stutz Motor Car of America v. Reebok Intern., Ltd.* (C.D.Cal. 1995) 909 F.Supp. 1353; each subsequent case espousing the view that the UCL categorically forecloses a common law modification of the last element accrual rule has relied on *Stutz* or its progeny without further reasoning.  (See *Suh v. Yang* (N.D.Cal. 1997) 987 F.Supp. 783, 795; *Snapp &*

8

*Associates Ins. Services, Inc. v. Robertson* (2002) 96 Cal.App.4th 884, 891; *Salenga*, at p. 996.)[4]  As we shall explain, *Stutz* misstated California law.

In support of its conclusion that the UCL categorically foreclosed application of the accrual exception there at issue (the discovery rule), *Stutz* reasoned that (1) the federal Sherman Act (15 U.S.C. § 1 et seq.) and Clayton Antitrust Act (15 U.S.C. § 12 et seq.) do not permit delayed accrual based on ignorance of a claim, (2) judicial interpretations of the Sherman and Clayton Acts apply fully to this state's antitrust act, the Cartwright Act (§ 16700 et seq.), and (implicitly) (3) interpretations of the Cartwright Act are equally applicable to the unrelated UCL.  (*Stutz Motor Car of America v. Reebok Intern., Ltd.*, *supra*, 909 F.Supp. at p. 1363.)  The second and third premises, construing state law, are each wrong.  Interpretations of federal antitrust law are at most instructive, not conclusive, when construing the Cartwright Act, given that the Cartwright Act was modeled not on federal antitrust statutes but instead on statutes enacted by California's sister states around the turn of the 20th century.  (*State of California ex rel. Van de Kamp v. Texaco, Inc.* (1988) 46 Cal.3d 1147, 1164 ["[J]udicial interpretation of the Sherman Act, while often helpful, is not directly probative of the Cartwright drafters' intent . . . ."]; see also *Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 772-773.)  As well, the *Stutz* court either assumed without explanation that decisions governing an antitrust claim under the Cartwright Act would apply equally to an unfair competition claim under the UCL or mistook one

---

**4**     Without referencing *Stutz*, a subsequent Ninth Circuit case also asserted that UCL claims never run from the date of their discovery, but it offered only an ipse dixit, with no reasoning to support its construction of California law.  (*Karl Storz Endoscopy-America, Inc. v. Surgical Technologies, Inc.* (9th Cir. 2002) 285 F.3d 848, 857; see also *Perez v. Nidek Co. Ltd.* (S.D.Cal. 2009) 657 F.Supp.2d 1156, 1166 [concluding it was bound by *Karl Storz*].)

for the other.  No justification for such a leap is evident; though the Cartwright Act and the UCL each address aspects of unfair business competition, they have markedly different origins and scopes.  (Compare *Texaco, Inc.*, at pp. 1153-1161 [discussing Cartwright Act's origins] and *Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1147 [discussing Cartwright Act's scope] with *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1263-1264 [discussing UCL's origins and scope].)  Despite these errors, *Stutz* has been accepted without critical analysis by numerous subsequent federal and state courts.

The contrary view is reflected in more recent cases like *Broberg v. The Guardian Life Ins. Co. of America*, *supra*, 171 Cal.App.4th 912.  (See also *Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1295; *Miller v. Washington Mut. Bank FA* (N.D.Cal. 2011) 776 F.Supp.2d 1064, 1070; *Neurontin Marketing & Sales Practices Litigation* (D.Mass. 2010) 748 F.Supp.2d 34, 84-85; *Clark v. Prudential Ins. Co. of America* (D.N.J. 2010) 736 F.Supp.2d 902, 921-923.)  *Broberg* involved a statute of limitations challenge to a claim of deceptive practices under the UCL.  The court reasoned that the underlying nature of the claim, not its form, should control.  (See *Jefferson v. J. E. French Co.* (1960) 54 Cal.2d 717, 718 ["[T]the nature of the right sued upon, not the form of action or the relief demanded, determines the applicability of the statute of limitations."].)  Consequently, that the cause of action was pleaded under the UCL should not preclude application of an equitable exception to the usual accrual rule; just like common law claims challenging fraudulent conduct, a UCL deceptive practices claim should accrue "only when a reasonable person would have discovered the factual basis for a claim."  (*Broberg*, at pp. 920-921.)  *Broberg* is consistent with both our precedent and the absence of anything in the text or legislative history of the UCL establishing a legislative desire either to

10

categorically limit or categorically guarantee the application of common law accrual exceptions under the UCL.

*Broberg* also highlights an aspect of the statutory scheme salient for limitations purposes:  the UCL is a chameleon.  The UCL affords relief from unlawful, unfair, or fraudulent acts; moreover, under the unlawful prong, the UCL " ' "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.)  Depending upon which prong is invoked, a UCL claim may most closely resemble, in terms of the right asserted, an action for misrepresentation (e.g., *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310), misappropriation (e.g., *Glue-Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal.App.4th 1018), price fixing (e.g., *Clayworth v. Pfizer, Inc.*, *supra*, 49 Cal.4th 758), interference with prospective economic advantage (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134), or any of countless other common law and statutory claims.  Given the widely varying nature of the right invoked, it makes sense to acknowledge that a UCL claim in some circumstances might support the potential application of one or another exception (e.g., *Broberg v. The Guardian Life Ins. Co. of America*, *supra*, 171 Cal.App.4th at pp. 920-921), and in others might not (e.g., *M&F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.* (2012) 202 Cal.App.4th 1509, 1531-1532 [concluding that while in theory delayed discovery might preserve an unfair competition claim, the nature of the particular UCL claim asserted precluded its application]).[5]

---

[5]     As well, the UCL and its remedies are equitable.  (*Korea Supply Co. v. Lockheed Martin Corp.*, *supra*, 29 Cal.4th at p. 1144.)  It would be inconsistent to conclude that while equity may drive the availability of remedies under the UCL,

*(footnote continued on next page)*

11

Accordingly, we conclude the UCL is governed by common law accrual rules to the same extent as any other statute. That a cause of action is labeled a UCL claim is not dispositive; instead, "the nature of the right sued upon" (*Jefferson v. J. E. French Co.*, *supra*, 54 Cal.2d at p. 718) and the circumstances attending its invocation control the point of accrual. The common law last element accrual rule is the default (see *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, *supra*, 6 Cal.3d at p. 187), while exceptions to that rule apply precisely to the extent the preconditions for their application are met, as would be true under any other statute. We disapprove *Snapp & Associates Ins. Services, Inc. v. Robertson*, *supra*, 96 Cal.App.4th 884, and *Salenga v. Mitsubishi Motors Credit of America, Inc.*, *supra*, 183 Cal.App.4th 986, to the extent they hold otherwise.

### III. *Canon's Statute of Limitations Defense*

We turn to the application of these principles to this case. Canon bears the initial burden of proving Aryeh's claims are barred by section 17208's four-year limitations period. (See, e.g., *Samuels v. Mix* (1999) 22 Cal.4th 1, 7-10.) Thereafter, the burden shifts to Aryeh to demonstrate his claims survive based on one or more nonstatutory exceptions to the basic limitations period. (See *Glue-Fold, Inc. v. Slautterback Corp.*, *supra*, 82 Cal.App.4th at p. 1030.) That burden may be imposed even at the pleading stage. (*Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 808.)

Canon has shown that under the default last element accrual rule, a claim accrued in February 2002. (See, e.g., *Pooshs v. Philip Morris USA, Inc.*, *supra*, 51 Cal.4th at p. 797 [a claim generally accrues when it is " 'complete with all of its

*(footnote continued from previous page)*

equitable exceptions have no place in determining whether a claim for relief has been timely asserted in the first instance.

elements'—those elements being wrongdoing, harm, and causation"].)  According to the operative complaint, Aryeh and Canon entered into a pair of copier leases in November 2001 and February 2002.  The agreements did not authorize charges for test copies.  Nevertheless, beginning in February 2002, Canon imposed excess copying charges for test copies.  It follows that no later than February 2002, Canon's alleged wrongdoing caused Aryeh injury and a claim accrued.  Accordingly, in the absence of an exception, the four-year statute of limitations would have run no later than 2006, barring Aryeh's 2008 suit.

To preserve his suit, Aryeh looks to continuing-wrong accrual principles.  There are two main branches, the continuing violation doctrine and the theory of continuous accrual.  (See, e.g., *Richards v. CH2M Hill, Inc.*, *supra*, 26 Cal.4th at pp. 811-818 [continuing violation doctrine]; *Howard Jarvis Taxpayers Assn. v. City of La Habra*, *supra*, 25 Cal.4th at pp. 818-822 [theory of continuous accrual].)[6]

The continuing violation doctrine serves a number of equitable purposes.  Some injuries are the product of a series of small harms, any one of which may not be actionable on its own.  (See *National Railroad Passenger Corporation v. Morgan*, *supra*, 536 U.S. at p. 115.)  Those injured in such a fashion should not be handicapped by the inability to identify with certainty when harm has occurred or has risen to a level sufficient to warrant action.  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1058; *Richards v. CH2M Hill, Inc.*, *supra*, 26 Cal.4th at

---

[6]     Some courts and commentators have alternately referred to the two branches as the " 'pure' " and the " 'modified' " forms of the continuing violations doctrine.  (See *White v. Mercury Marine, Div. of Brunswick, Inc.* (11th Cir. 1997) 129 F.3d 1428, 1430; Graham, *The Continuing Violations Doctrine* (2007-2008) 43 Gonzaga L.Rev. 271, 279-283.)

13

pp. 820-821.) Moreover, from a court-efficiency perspective, it is unwise to impose a limitations regime that would require parties to run to court in response to every slight, without first attempting to resolve matters through extrajudicial means, out of fear that delay would result in a time-barred action. (*Yanowitz*, at pp. 1058-1059; *Richards*, at pp. 820-821.) Allegations of a pattern of reasonably frequent and similar acts may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period. (*Yanowitz*, at p. 1059; *Richards*, at p. 823; see also *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 345 [applying the doctrine to harassing debt collection activities].)

Here, however, nothing in the operative complaint alleges the presence of factors that might warrant application of the continuing violation doctrine. The complaint identifies a series of discrete, independently actionable alleged wrongs. Nor is this a case in which a wrongful course of conduct became apparent only through the accumulation of a series of harms; Aryeh concedes he was aware of, recognized as wrongful, and was recording as early as 2002, Canon's allegedly fraudulent and unfair acts. (Cf. *Yanowitz v. L'Oreal USA, Inc.*, *supra*, 36 Cal.4th at p. 1058 [applying the continuing violations doctrine where "some or all of the component acts might not be individually actionable" and the plaintiff "may not yet recognize" the acts "as part of a pattern"].) Consequently, the trial court and the Court of Appeal correctly rejected the continuing violation doctrine's application.

Recognizing this, Aryeh focuses before us on the theory of continuous accrual. The theory is a response to the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach or

14

misconduct; parties engaged in long-standing misfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing misfeasance. In addition, where misfeasance is ongoing, a defendant's claim to repose, the principal justification underlying the limitations defense, is vitiated.

To address these concerns, we have long settled that separate, recurring invasions of the same right can each trigger their own statute of limitations. In *Dryden v. Board of Pension Commrs.* (1936) 6 Cal.2d 575, for example, a widow belatedly sued for a pension after a six-month period for the presentation of claims had expired. Because "[t]he right to pension payments is a continuing right," the expired limitations period did not leave the plaintiff "without means to enforce the right to present and future pension payments, as distinguished from past and accrued pension payments" (*id.* at pp. 580-581, italics omitted); instead, the suit was timely as to these most recent and future owed payments. Similarly, in *Howard Jarvis Taxpayers Assn. v. City of La Habra*, *supra*, 25 Cal.4th 809, the plaintiffs belatedly challenged the validity of a municipal tax. Though the limitations period had run on any direct challenge to the validity of the ordinance imposing the tax, we concluded suit was still permissible because the continuing monthly collection of the tax represented an alleged ongoing breach of state law. (*Id.* at pp. 818-822; see also *Green v. Obledo* (1981) 29 Cal.3d 126, 141 ["[E]ach deficient payment constitutes a separate violation triggering the running of a new period of limitations . . . ."].)

Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: "When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." (*Hogar Dulce Hogar v. Community Development Commission* (2003) 110 Cal.App.4th 1288, 1295.) Because each new breach of such an obligation provides all the elements of a claim—

15

wrongdoing, harm, and causation (*Pooshs v. Philip Morris USA, Inc.*, *supra*, 51 Cal.4th at p. 797)—each may be treated as an independently actionable wrong with its own time limit for recovery.

However, unlike the continuing violation doctrine, which renders an entire course of conduct actionable, the theory of continuous accrual supports recovery only for damages arising from those breaches falling within the limitations period. In *Jones v. Tracy School Dist.* (1980) 27 Cal.3d 99, for example, an employee sued for sex discrimination in her wages. The unlawful practice had gone on for six years. While the applicable two-year statute of limitations did not bar suit, because the obligation not to discriminate in setting wages was an ongoing one, we concluded it limited the employee to recovery only of those lost wages owed during the preceding two years. (*Id.* at pp. 103-107; see also *Green v. Obledo*, *supra*, 29 Cal.3d at p. 141 [recovery limited to payments that accrued within the limitations period preceding suit]; *Dryden v. Board of Pension Commrs.*, *supra*, 6 Cal.2d at p. 582 [same].) "[T]he continuing accrual rule effectively limits the amount of retroactive relief a plaintiff or petitioner can obtain to the benefits or obligations which came due within the limitations period." (*Hogar Dulce Hogar v. Community Development Commission*, *supra*, 110 Cal.App.4th at p. 1296.)[7] Consequently, if applicable here, the theory would permit Aryeh to sue, but only for those discrete acts occurring within the four years immediately preceding the filing of his suit.

Canon correctly notes that we have applied the theory of continuous accrual largely in suits against public entities, but nothing in the rationale underlying the

---

[7]     This limit serves the salutary purpose of promoting diligence among would-be plaintiffs and reducing the risk of suits on stale evidence.

doctrine so limits it, and the Courts of Appeal have properly applied the rule equally to continuing or recurring obligations owed by private entities. Thus, in *Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1344, the Court of Appeal concluded a commercial landlord's 1993 suit for back rent dating to 1982 was not barred; rather, the periodic monthly payments owed were a recurring obligation, with a new limitations period arising for each, and the landlord could seek disputed amounts for the duration of the limitations period preceding suit. And in *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1388-1389, the Court of Appeal concluded a gas and oil lease calling for monthly payments created a severable, recurring obligation, with each monthly payment triggering its own statute of limitations. Accordingly, the plaintiff could sue for underpayments within the limitations period preceding suit. (See also *Wells Fargo Bank v. Bank of America* (1995) 32 Cal.App.4th 424, 439, fn. 7; *Conway v. Bughouse, Inc.* (1980) 105 Cal.App.3d 194, 199-200; cf. *Klehr v. A. O. Smith Corp.* (1997) 521 U.S. 179, 189-190 [noting the availability of the theory of continuous accrual in antitrust suits against private entities].)

To determine whether the continuous accrual doctrine applies here, we look not to the claim's label as a UCL claim but to the nature of the obligation allegedly breached. (See *ante*, at pp. 10-12.) Canon billed Aryeh on a recurring monthly basis. Accepting the truth of the complaint's allegations solely for purposes of resolving Canon's limitations defense on demurrer, those bills periodically included test copy charges that were unfair or fraudulent. By its nature, the duty Canon owed—the duty not to impose unfair charges in monthly bills—was a continuing one, susceptible to recurring breaches. Accordingly, each alleged breach must be treated as triggering a new statute of limitations. (*Hogar Dulce Hogar v. Community Development Commission*, *supra*, 110 Cal.App.4th at

17

p. 1295 ["When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period."]; see also *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, *supra*, 116 Cal.App.4th at pp. 1388-1391 [treating each disputed monthly bill as triggering a new statute of limitations]; *Tsemetzin v. Coast Federal Savings & Loan Assn.*, *supra*, 57 Cal.App.4th at p. 1344 [same].) Aryeh cannot recover alleged excess charges preceding the four-year limitations period, but is not foreclosed from seeking recovery for charges to the extent they fall within that period. Because the complaint alleges excess charges within the four years preceding suit, it is not completely barred by the statute of limitations.[8]

Canon argues that the theory of continuous accrual should not save Aryeh's complaint because his claim is at its heart a fraud claim. That is, according to Canon, the complaint actually describes a single fraud or deception committed in 2001 or 2002, when the parties entered their contracts, rather than a recurring wrongful act; the duty owed and allegedly breached is not a continuing one, but instead the duty not to engage in fraud or deception, a duty the complaint shows was breached at the latest in 2002, and whose breach was discovered almost immediately thereafter. (See *State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 418 [rejecting application of the continuous accrual rule to a suit over allegedly fraudulent statements where every

---

**8**     Contrary to Canon's objections, the operative complaint in fact pleads this matter as a continuous accrual case. It alleges each monthly overcharge as a distinct breach and forswears recovery of charges incurred more than four years before the filing of the complaint. Although earlier versions of the complaint did not specify each overcharge was a distinct claim, nothing in the theory of continuous accrual requires every severable act to be pleaded as a distinct cause of action, nor is any allegation in the two prior complaints inconsistent with applying the theory here.

18

alleged statement arose out of a transaction occurring before the limitations period ran, and the suit thus involved neither "a recurring obligation" nor "periodic payment obligations"].)

We might agree if the operative complaint sounded solely in fraud and alleged a single fraud committed at contract formation. However, " '[I]t is error for a . . . court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory.' " (*Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 810.) On its face, the operative complaint, like the two preceding it, alleges that the recurring imposition of excess charges was not only fraudulent but also unfair. Whether the charges are actionable as an unfair business practice under the UCL is not before us at this stage; if they are actionable as such, each monthly imposition of excess charges would constitute a new unfair act with its own attendant limitations period.[9]

Canon also relies on *Snapp & Associates Ins. Services, Inc. v. Robertson*, *supra*, 96 Cal.App.4th 884, but that case does not bar application of continuous accrual here. In *Snapp*, the defendant insurance brokerage allegedly misappropriated client accounts and thereafter received commissions on the accounts. Because the act of misappropriation had occurred more than four years before suit was filed, the court found an action for conversion and related counts, including violation of the UCL, time-barred. (*Snapp*, at pp. 891-892.) *Snapp*, however, omits discussion of the theory of continuous accrual and thus is not

---

[9]    We do not suggest that, to the extent the operative complaint does allege a fraud theory, it is timely. We hold only that, because the complaint alleges an alternate theory that continuous accrual principles save in part, the complaint as a whole is not entirely time-barred.

19

authority on the question whether continuous accrual might have applied there, or might apply here.

In sum:  At the demurrer stage, Aryeh is the master of his complaint, and we must accept his allegations at face value.  He has alleged a recurring unfair act—the inclusion in monthly bills of charges for copies Canon itself made.  The theory of continuous accrual applies to such allegations, and insofar as the operative complaint alleges at least some such acts within the four years preceding suit, the suit is not entirely time-barred.

## DISPOSITION

We express no opinion as to the validity of other defenses asserted by Canon in its demurrer or the availability of any defenses at a later stage of the proceedings.  We hold only that, at the demurrer stage, Aryeh's complaint is not barred in its entirety by the statute of limitations.  As that was the Court of Appeal's sole basis for affirming the trial court's dismissal of this action, its judgment must be reversed.  We remand for further proceedings not inconsistent with this opinion.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**

20

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Aryeh v. Canon Business Solutions, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 185 Cal.App.4th 1159
**Rehearing Granted**

_____

**Opinion No.** S184929
**Date Filed:** January 24, 2013

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Robert L. Hess

_____

**Counsel:**

Westrup Klick, R. Duane Westrup, Mark L. Van Buskirk, Jennifer L. Connor; Krieger & Krieger, Linda Guthmann Krieger and Terrence B. Krieger for Plaintiff and Appellant.

Arbogast & Berna, David M. Arbogast; Spiro Moss, J. Mark Moore and Denise L. Diaz for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Manuel M. Medeiros, State Solicitor General, Frances T. Grunder, Assistant Attorney General, and Michele Van Gelderen, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Appellant.

Kasowitz, Benson, Torres & Friedman, Charles N. Freiberg, Brian P. Brosnahan, David A. Thomas, Jacob N. Foster, Jeanette E. Thurber; Levine & Miller, Harvey R. Levine and Craig A. Miller for Beverly Clark, Warren Gold and Linda M. Cusanelli as Amici Curiae on behalf of Plaintiff and Appellant.

Dorsey & Whitney, Kent J. Schmidt, John P. Cleveland, Richard H. Silberberg and Robert G. Manson for Defendant and Respondent.

Bowman and Brooke, Larry R. Ramsey and Renee S. Konigsberg for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Plaintiff and Appellant.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

R. Duane Westrup
Westrup Klick
444 Ocean Boulevard, Suite 1614
Long Beach, CA  90802-4524
(562) 432-2551

Kent J. Schmidt
Dorsey & Whitney
600 Anton Boulevard, Suite 2000
Costa Mesa, CA  92626
(714) 800-1400